UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY H. FLEMING,

    Plaintiff,

vs.                                                                                    Case No.

KELLOGG COMPANY WELFARE                               HON.
BENEFIT PLAN, and LIFE INSURANCE
COMPANY OF NORTH AMERICA,

    Defendants.

---

Troy W. Haney (P48614)
HANEY LAW OFFICE, P.C.
Attorney for Plaintiff
330 East Fulton Street
Grand Rapids, MI 49503
Telephone:  616-235-2300
Facsimile:  616-459-0137
Email:  thaney@troyhaneylaw.com

---

## COMPLAINT

Plaintiff, Bradley H. Fleming, by his attorney, Troy W. Haney of Haney Law Office, P.C., and for his complaint against Defendants, Kellogg Company Welfare Benefit Plan, and Life Insurance Company of North America, states as follows:

### Nature of Action and Jurisdiction

1.     This is a civil complaint brought by Plaintiff, Bradley H. Fleming ("Plaintiff"), under the Employee Retirement Income Security Act ("ERISA"), §502, 29 U.S.C. 1132, regarding breach of the terms of an employee benefit plan and breach of fiduciary duties, for the purpose of compelling Defendants to provide certain disability insurance benefits in amounts and at the coverage levels promised and for an accounting, recovery of damages,

costs, and attorney fees incurred as a consequence of Defendants' breaches of their obligations and duties under ERISA as detailed herein.

2. This Court has subject jurisdiction over Plaintiff's claims pursuant to ERISA §502(e) and (f), 29 U.S.C. 1132(e) and (f) and 28 U.S.C. 1331.

3. Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 U.S.C. 1132(e)(2).

### Parties and General Allegations

4. At all relevant times, Plaintiff was a participant, as defined by ERISA §3(7), 29 U.S.C. 1002(7), in the Kellogg Company Welfare Benefit Plan ("the Plan") provided by The Kellogg Company, to its eligible employees, including Plaintiff, which is self-funded by The Kellogg Company, and administered by Defendant Life Insurance Company of North America ("LINA"), for group disability benefits.

5. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. 1002(1), sponsored by The Kellogg Company and self-funded by the above-referenced Plan issued by The Kellogg Company. As such, the Plan is a proper party to defend this matter and the sole entity responsible for the payment of claimed benefits set forth below.

6. At all relevant times, Defendant LINA was the fiduciary of the Plan within the meaning of ERISA §3(21), 29 U.S.C. 1002(21), in that Defendant LINA acted as a claims administrator and as a fiduciary for the Plan and exercised authority over the payment of short term disability "STD" benefits, which are assets of the Plan. Pursuant to 29 C.F.R. §2560.503-1(h)(1), Defendant LINA, therefore, functioned as an administrator for claims procedure purposes.

## Facts

7. At all relevant times the Plaintiff was employed full-time by The Kellogg Company as a Senior Tax Accountant, until his last day of work on June 10, 2019.

8. The Plaintiff first began to experience severe and chronic migraines in August 2016, which caused him to stop working for approximately one year until he was able to return to work in September 2017. During this period, the Plaintiff applied for and was granted both short term and long term disability benefits.

9. In August 2018, the Plaintiff's migraines returned, and he once again ceased working and remained out of work until February 2019. The Plaintiff applied for STD benefits for this period, and although the benefits were initially denied, after going through the administrative appeal process, the Plaintiff's STD benefits were eventually approved and paid.

10. In early 2019, the Plaintiff was treated with ketamine infusions that temporarily resulted in substantial improvement of his migraines. This allowed the Plaintiff to continue working for a few months, but then his chronic migraines returned, and he was forced to stop working again on June 10, 2019 – his final day of work.

11. The Plaintiff's attending physicians supporting his disability status have stated in various forms and office notes the following:

> **April 13, 2018 – Medical Request Form – Dr. Kenneth Brooks**
> [What are the specific additional factors impacting return to work, if any?]
> Migraine is a severely debilitating disease which can flare up without warning.
>
> [What are the specific restrictions that you have placed on your patient?]
> …he will not be able to function normally when he has severe headaches. When he has moderate headaches, his productivity will drop by at least 50%, he will take longer to complete tasks, and make more mistakes.
>
> **October 30, 2018 – Medical Request Form – Dr. Douglas Campbell**
> [What are the specific additional factors impacting return to work, if any?]
> Fluorescent lighting at work tends to promote or trigger migraine. Temperature and ventilation conditions at work trigger migraine.

> [Could your patient return to work at this time if accommodations were made for the listed restrictions?] No. Migraine remains too severe.
>
> **December 21, 2018 – Office Note – Dr. Douglas Campbell**
> He was again seen on December 5, 2018 following evaluation and treatment at the Mayo Clinic. He continues to experience significantly disabling migraine. In addition to severe disabling, distracting pain, this causes him to have an inability to focus mentally which is necessary for him to perform his work. He has markedly reduced attention to detail…Until his migraine resolves, I consider him to be completely disabled.
>
> **May 22, 2019 – Office Note – Dr. Douglas Campbell**
> He has been afflicted with severe migraine headache for a good portion of time over the last 3 years. These headaches have been extremely severe. They have resulted in impaired mental function, decreased attention to detail and complete inability to focus. In his position as a tax accountant these migraines have been completely incapacitating. Migraine first became a problem for him in the summer 2016. He did not improve with multiple different medications. He went to the Mayo Clinic in December 2016. He was started on Botox injections which helped somewhat, allowing him to resume work in late 2017. Unfortunately, the migraine relapsed in the summer 2018, again to the point of incapacitation. He experienced some improvement after nerve block in January 2019 but the migraine continued to affect his ability to work.

12. In addition to the Plaintiff's chronic migraine diagnosis, he has also been diagnosed with Daily Persistent Headache. While experiencing a migraine, the Plaintiff does not have the ability to focus mentally and has a reduced attention to detail. Fluorescent lights and temperature changes are known triggers for his migraines. The Plaintiff has attempted multiple medications and treatments, including Ibuprofen 800 mg, three times daily, Tylenol, Botox injections, a nerve block injection in January 2019, and also ketamine infusions. Unfortunately, due to a lack of health insurance, the Plaintiff had to stop Botox injections and currently only takes Ibuprofen and Tylenol, which have been ineffective to combat his migraine pain.

13. On September 27, 2019, as part of the Plaintiff's appeal process for STD benefits for the August 2018 – September 2019 disability period, a Vocational Rehabilitation Evaluation was completed by Dr. Robert Ancell, and which stated in part,

> His current symptoms continue to be migraine headaches every day, some days are less severe than others… He indicates the range of time can be days or

4

> possibly weeks and they are unpredictable in terms of duration. The headaches are described as being building up of pressure in his head. He has nausea, difficulty with concentration and focus. He also has fatigue, lack of energy and depression. * * *
>
> A functional job document from Kellogg noted that the job was continuously sitting with occasional standing, walking, lifting no more than 10 pounds on occasional basis. The cognitive factors include demonstrating ability to follow simple instructions, processes and written word, ability to make decisions, ability to communicate effectively with supervisors, co-workers and customers. The ability to function independently and the ability to perform the essential function of the job, demonstrate emotional stability and be aware of normal work hazards and necessary safety procedures, exhibit mathematical ability and reasoning, maintain attention/concentration for the duration of the work day and must be able to demonstrate reliability and initiative.
>
> From a vocational rehabilitation standpoint, Mr. Fleming has sustained very significant limiting problems. He is approaching advance age, therefore the analysis is done with directly related occupations. It is clear from the description of his job and his responsibilities along with his performance reviews that he has to function at a very high level of concentration and focus with significant time constraints. It is clear that when he was able to perform the job, he performed it at a high level and received excellent performance reviews. **Given the headaches, loss of consciousness and focus the level of pain and fatigue issues he is and remains totally unemployable.** (Emphasis added).

14. On October 10, 2019, the Plaintiff's physician, Douglas Campbell, M.D., issued a Physician Statement of Disability, and stated in part,

    > On August 26, 2018, Mr. Fleming's migraines returned to such a level of pain that he ceased work on that day. Mr. Fleming remained out of work until February 2019. I am aware that Mr. Fleming remained at work until June 10, 2019, at which time he ceased working again due to the severe and chronic migraines he suffers. * * *
    >
    > When in the throes of a migraine, Mr. Fleming has advised that he needs to lay down in a dark room; experiences nausea; has severe and debilitating pain and does not have the ability to focus and has reduced attention to detail and concentration. * * *
    >
    > **As Mr. Fleming's primary care physician, I have had the opportunity to examine him in a clinical setting several times and it is my medical opinion that he is disabled from his employment as an Accountant and any full-time occupation at this time.** (Emphasis added).

15. As of December 10, 2019, it had been six months since the Plaintiff had his final day of work. Although the Plaintiff should have been paid additional STD benefits during this time and then transitioned over into being paid LTD benefits, instead, he was still disputing

5

with Defendant LINA his right to be paid STD benefits for the August 2018 through February 2019 period.

16. On March 9, 2020, as part of the Plaintiff's ongoing appeal process for STD benefits during his August 2018 – September 2019 disability period, Dr. Ancell issued an addendum to his Vocational Rehabilitation Evaluation, which stated in part,

> Mr. Fleming is about to turn 55 which will place him in the category of advanced age. Since November 2019 he continues to sleep an average of 16 hours per day. He is awake mostly at night when it dark outside and quiet. He continues to see the [primary care physician] and Neurologist. * * *
>
> He indicated that he is averaging 20 days per month of headaches. When he has the headaches, he goes to the dark room… He also indicated that changes in the barometric pressure trigger his headaches. * * *
>
> He shared that as long as he avoids the triggers for his headaches the frequency of headaches remains at approximately 20 days per month. * * *
>
> **From a vocational rehabilitation standpoint, my opinion remains that there are not jobs that Mr. Fleming can perform based on the medical records of his neurologist and [primary care physician]. The fact that he is sleeping 16 hours per day, is having 20 days/month of headaches and has to stay away from environmental triggers along with weather changes further restrict his employability. His job required high level cognitive functioning. Concentration and focus were critical to the performance of his job. The doctors that know him the best have continued to document that he is totally unable to work.** (Emphasis added).

17. On June 10, 2020, Defendant LINA overturned its initial decision to deny the Plaintiff's claim for STD benefits for the August 2018 - February 2019 disability period.

18. On June 16, 2020, the Plaintiff requested from Defendant LINA an application for LTD benefits, however, the Defendant informed the Plaintiff that due to the August 2018 - February 2019 disability period being less than the required 26-week Elimination Period for LTD, he did not qualify to apply for LTD benefits at this time.

19. In July 2020, the Plaintiff applied for a new period of STD benefits, with the requested period starting after his final day of work on June 10, 2019.

6

20. The definition of "Disability/Disabled" within the STD Plan is as follows:

> Disabled means that, because of a non-occupational Illness or Injury, you are unable to perform the essential functions of your Regular Occupation or a Transitional Work Arrangement, or you are unable to earn 80% or more of your Covered Earnings.

21. The definition of "Regular Occupation" within the STD Plan is as follows:

> The occupation you routinely perform for Employer the time your Disability begins. In evaluating Disability, the Claims Administrator will consider the duties of your Regular Occupation as it is normally performed in the general labor market in the national economy.

22. The STD Plan also includes a "Physical Examination" clause, which states as follows:

> The Claims Administrator, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. You will have the right to choose any Physician who is practicing legally. The Plan will in no way disturb the Physician/patient relationship.

23. On August 19, 2020, Defendant LINA's Claim File includes an email from Bart Fleming, a "Team Leader for Short Term Disability" for Defendant LINA, addressed to four other team members, Abagail Filippi, Jatoya Cole, Rachel Brophy, and Brandy Mysliwiec, and the email message noted that the Plaintiff had initiated a new STD claim, and that "*there may also be relevant information in the appealed/closed claim.*"

24. On September 14, 2020, Defendant LINA denied the Plaintiff's most recent STD claim based on a lack of medical documentation.

25. On July 14, 2021, the undersigned appealed Defendant LINA's decision to deny the Plaintiff's most recent STD claim, providing copies of the Plaintiff's previously submitted medical records from his prior claims, additional medical records, and also a new Medical Request Form from Dr. Campbell, dated June 24, 2020, and which stated in part:

> [What are the specific additional factors impacting return to work, if any?]
> When he is experiencing a migraine, it is totally incapacitating preventing him from doing any type of work.

> [Could your patient return to work at this time if accommodations were made for the listed restrictions?]
> **No. At this point he is experiencing persistent severe headaches which render him incapacitated.** (Emphasis added).

26. On August 11, 2021, Defendant LINA issued a letter to the Plaintiff, confirming receipt of the administrative appeal for his STD claim. On the *same day*, Defendant LINA also issued a premature denial of the Plaintiff's appeal, stating in part,

> All medical information on file was reviewed with a Nurse Case Manager. Based on complete review of all medical documentation, it has been concluded that the medical evidence on file does not support an ongoing a severe functional impairment.

Considering that Defendant LINA drafted and issued a denial letter of the Plaintiff's appeal on the same day that it confirmed receipt of the Plaintiff's appeal is quite troubling and highly suggestive that Defendant LINA had no intention of providing the Plaintiff with a full and fair review process, and it further suggests that Defendant LINA's review process was result-oriented to issue a denial before the review process even took place.

27. On August 19, 2021, after apparently recognizing its previous error, Defendant LINA issued a letter to the Plaintiff stating that the status of the Plaintiff's appeal was that it was currently under initial review, but without providing any explanation for the August 11, 2021 denial letter.

28. On October 5, 2021, the undersigned informed Defendant LINA that the Plaintiff had transitioned his care from Dr. Douglas Campbell to Richard Semones, M.D., and provided additional medical records from Dr. Semones.

29. On October 14, 2021, Defendant LINA issued a letter to the Plaintiff, notifying him of its intent to maintain the decision to deny his STD claim, but also to provide the Plaintiff with an opportunity to review and respond to its decision. Also, although Defendant LINA cited that it had relied on medical reviews by a Nurse Case Manager and a Behavioral Health

      Specialist, it did not provide copies of their reports for an opportunity for the Plaintiff to review and respond to the reports. Because the decision to deny the Plaintiff's STD claim was based on these reports, both reports should have been shared with the Plaintiff, as is required by the Claims Procedures for the Department of Labor, 29 C.F.R. § 2560.503-1(h)(4)(i), in order to be considered a full and fair review.

30. On October 19, 2021, the undersigned responded to the Defendant, stating in part,

> We have no further information to submit in favor of Mr. Fleming's claim at this time and believe we have provided Cigna with an overwhelming amount of information to substantiate Mr. Fleming's claim for short term disability benefits as well as long term disability benefits.

31. On November 5, 2021, Defendant LINA issued a letter to the Plaintiff notifying him that it was maintaining the decision to deny his STD benefits for the period starting June 11, 2019. The decision was based in part on the reviews completed by a Nurse Case Manager and Behavioral Health Specialist, whose names and reports were not provided to the Plaintiff. Notably, the proper physician specialist to review a disability based on migraine headaches would be a Neurologist, but no such review was completed. It should also be noted that although Defendant LINA had a right to conduct a physical examination of the Plaintiff, it never requested the Plaintiff to undergo such an examination.

32. In the November 5, 2021 final denial letter, Defendant LINA also informed the Plaintiff that he had "*exhausted all administrative levels of appeal*" and that the Plaintiff had "*the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a)*".

33. Also, despite being denied STD benefits from the Defendants, the Plaintiff firmly believes he is entitled to ongoing LTD benefits as well, including for disability from his Regular Occupation between December 10, 2019 and December 9, 2021, and for disability from

Any Occupation starting on December 10, 2021, until the end of his eligibility for LTD benefits, at the age of 67, on August 17, 2032 (or until the Plaintiff's ongoing disabling medical issues have been resolved).

## COUNT I
### Claim for Benefits Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) against Defendants

34. The Plaintiff incorporates paragraphs 1 through 33 above as if fully restated herein.

35. ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan and/or to clarify his rights to future benefits under the terms of a plan.

36. The failure to pay full disability benefits as described above are in direct violation of the terms of the Plan.

37. The Plan has failed to pay disability benefits to the Plaintiff despite the recommendations of his physicians and disabling medical conditions.

38. The failure and refusal of the Plan to pay the benefits owed the Plaintiff under the Plan is a breach of the terms and provisions of the Plan.

39. In addition, the Plan has failed to properly and thoroughly investigate the Plaintiff's claim in the manner required by ERISA's fiduciary and claims procedure requirements.

40. The actions of the Plan have caused damage to the Plaintiff in the form of the denial of short term disability and long term disability benefits.

41. In addition, because the Plan denied the payment of the Plaintiff's short term disability benefits, the Plaintiff became ineligible for other benefits provided through his employment such as pension, medical benefits, and the waiver of group life insurance premiums.

**PRAYER FOR RELIEF**

      Plaintiff requests that this Honorable Court grant the following relief:

A.    A declaratory judgment pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132 (a)(1)(B) and 28 U.S.C. 2201, declaring that the Plaintiff is entitled to the group employee benefits in the proper amounts as set forth in the Plan in effect at the time benefits became payable and that the Defendants have violated the Plan and their fiduciary duties by failing to pay these benefits and honor the group waiver of life premium.

B.    A full and accurate accounting by the Defendants of all computations for the Plaintiff's employee benefits, in sufficient detail so that the Plaintiff may ascertain that his benefits are being paid in the proper amount.

C.    An Order compelling the Defendants to pay the Plaintiff forthwith the full amount of employee benefits due to him and to continue such payments for the period set forth in the Plan, including interest on all unpaid benefits.

D.    An Order awarding reasonable attorney fees and costs pursuant to ERISA §502(g)(1), 29 U.S.C. 1132 (g)(1).

E.    Such other relief as may be just and appropriate.

Dated: April 18, 2022

                        */s/ Troy W. Haney*
                        Troy W. Haney (P48614)
                        HANEY LAW OFFICE, P.C.
                        Attorney for Plaintiff
                        330 East Fulton Street
                        Grand Rapids, MI 49503